**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-4406

UNITED STATES OF AMERICA,

        Plaintiff − Appellee,

   v.

MOHAMAD JAMAL KHWEIS,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:16−cr−00143−LO−1)

Submitted: April 25, 2023                             Decided: August 4, 2023
Amended: August 8, 2023

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and FLOYD, Senior Circuit Judge.

Affirmed by unpublished opinion. Chief Judge Diaz wrote the opinion, in which Judge Rushing and Senior Judge Floyd joined.

**ON BRIEF:** Louis C. Allen, Federal Public Defender, Kathleen A. Gleason, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Jessica D. Aber, United States Attorney, Richmond, Virginia, Raj Parekh, First Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

The district court sentenced Mohamad Khweis to concurrent 168-month prison terms for providing and conspiring to provide material support to ISIL,[*] a foreign terrorist organization. Khweis argues the district court erred in applying a twelve-level sentencing enhancement for offenses involving or intending to promote a federal crime of terrorism. *See* U.S.S.G. § 3A1.4. And he says his sentence is substantively unreasonable because the court didn't adequately account for his post-conviction conduct.

Finding neither argument persuasive, we affirm.

I.

A.

Khweis was born and raised in the United States. When he was 26, he became interested in joining ISIL. After seeking travel advice from ISIL-affiliated social media accounts, he quit his job, sold his car, and bought a one-way ticket to London. He left Virginia in December 2015, one month after ISIL attacks killed more than a hundred people in Paris.

---

[*] "ISIL" stands for Islamic State in Iraq and the Levant. ISIL goes by several other names, including Islamic State of Iraq and ash-Sham (ISIS), the name used by the parties; Islamic State (IS); and Daesh, an acronym for its Arabic name. *See* Central Intelligence Agency, *Islamic State of Iraq and ash-Sham (ISIS)*, World Factbook, https://www.cia.gov/the-world-factbook/references/terrorist-organizations/ [https://perma.cc/9HWU-2SHJ].

2

From London, Khweis traveled to the Netherlands and then to Turkey. He took measures to hide his travel, booking flights on a new email account and using encrypted applications to communicate.

While in Turkey, Khweis contacted ISIL recruiters using a Twitter account labeled "iAGreenBirdiA." J.A. 1009. He chose the name because he knew ISIL members used "GreenBird" in "refer[ence] to violent jihad" and he wanted the recruiters to trust him. J.A. 1010–11. His plan worked: ISIL recruiters smuggled him into Syria.

Over the following months, Khweis lived in ISIL safe houses and compounds in Syria and Iraq, where he provided financial support, ran errands, and cared for wounded ISIL fighters. Among the fighters he lived with were an American Khweis knew was being trained to launch an attack in the United States and three Iraqi ISIL fighters who were training in Syria before returning to Iraq to fight coalition forces.

Khweis attended religious training where participants prayed for "God [to] destroy America." J.A. 1117. He had his blood drawn and was issued ISIL credentials. And while there's no evidence that Khweis was directly involved in combat operations, the government presented an ISIL document listing Khweis as a "fighter." J.A. 534.

Khweis didn't naively travel abroad and only then learn ISIL's true colors. He told FBI agents that he knew before leaving Virginia that ISIL was a terrorist organization and that one of its main goals is to "destroy America." J.A. 563. He also admitted to watching several propaganda videos before leaving the United States, including one where ISIL burned a Jordanian pilot alive. And Khweis's phones contained images of ISIL's then-leader, ISIL fighters with guns, mass graves, bodies covered in dust and blood, and the

3

World Trade Center on 9/11. Forensic analysis showed these photos were saved to Khweis's phones before he entered Syria.

Khweis was with ISIL for less than three months. Kurdish Peshmerga forces took him into custody after he decided he "needed to leave" ISIL and walked into Peshmerga-held territory. J.A. 929. He was eventually transferred to U.S. custody.

B.

1.

Khweis was charged with conspiring to provide material support to ISIL, under 18 U.S.C. § 2339B; providing and attempting to provide material support or resources to ISIL, also under 18 U.S.C. § 2339B; and possessing, using, and carrying firearms during and in relation to a crime of violence, under 18 U.S.C. § 924(c)(1)(A).

He had a jury trial and testified in his own defense. Khweis maintained that he was mostly interested in ISIL's nonviolent activities and decided while he was in Turkey to briefly visit Syria "to see" the ISIL caliphate. J.A. 891. But he admitted that he understood the caliphate couldn't exist without ISIL's violent activities. *See* J.A. 988–89 (Q: "[Y]ou . . . told the FBI that there is no one side without the other in the Islamic State, correct?" A: "Yes, I did say, yes.").

Khweis testified that once he was with ISIL, he feared being "jailed or possibly killed" if he asked to leave. J.A. 925. And he explained that he repeatedly tried to escape, particularly once he learned he would soon receive military training.

Much of Khweis's testimony contradicted what he told the FBI agents who interviewed him in Iraq, and he was heavily impeached by the government. The jury convicted him on all three counts.

2.

Khweis had a base offense level of 26 and received three sentencing enhancements: (1) a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1; (2) a two-level enhancement for providing material support with reason to believe it would be used to assist in the commission of a violent act under § 2M5.3(b)(1)(E); and (3) a twelve-level increase for "a felony that involved, or was intended to promote, a federal crime of terrorism" under § 3A1.4(a) (the "terrorism-promotion enhancement"). *See* J.A. 1527. This last enhancement also increased his criminal history category from I to VI. *See* J.A. 1258; U.S.S.G. § 3A1.4(b).

The enhancements resulted in a total offense level of 42 and an advisory guideline range of 360 months to life on the two terrorism counts (though each count had a 240-month statutory maximum). Without the twelve-level terrorism-promotion enhancement and associated criminal-history increase, Khweis's guideline range on the terrorism counts would have been 97 to 121 months. Khweis also faced a mandatory consecutive sentence of at least 60 months' imprisonment on the § 924(c) count.

The district court imposed a below-guidelines sentence: concurrent terms of 180 months on the two terrorism counts followed by 60 months on the § 924(c) conviction, plus ten years of supervised release.

5

3.

Khweis appealed his convictions and sentence. He challenged the district court's denial of his motion to suppress some of his statements to FBI agents, argued his § 924(c) conviction was invalid, and asserted that the district court hadn't made adequate factual findings for the § 3A1.4 terrorism-promotion enhancement and the separate terrorism enhancement under § 2M5.3(b)(1)(E).

We vacated Khweis's § 924(c) conviction after concluding his conspiracy offense was no longer a predicate crime of violence, otherwise affirmed his convictions, and remanded for resentencing. *See United States v. Khweis*, 971 F.3d 453, 464 (4th Cir. 2020). We left Khweis's sentencing arguments to the district court.

4.

The district court conducted a thorough resentencing. It again applied the obstruction and terrorism-promotion enhancements but declined to apply § 2M5.3(b)(1)(E). Still, Khweis's guideline range remained at 360 months to life on the two terrorism counts.

The government asked the court to impose 240 months' imprisonment, equal to what Khweis had cumulatively received the first go-around. Khweis's counsel asked for 63 months.

The court acknowledged that it might have originally imposed a higher term on the terrorism counts had Khweis not been subject to the five-year consecutive sentence for his § 924(c) conviction. *See* J.A. 1501 ("[P]erhaps [I] would have given a 17- or 18-year sentence had the gun charge not been present for me to deal with."). But it also credited

6

Khweis's rehabilitation and record in prison. After considering the § 3553(a) factors, the district court imposed concurrent 168-month sentences on both remaining counts.

This appeal followed.

II.

Khweis challenges his new sentence on two grounds. He argues he didn't have the specific intent necessary for the terrorism-promotion enhancement. And he says his below-guidelines sentence is substantively unreasonable because it doesn't adequately account for his post-conviction conduct. We consider (and reject) both arguments.

A.

We begin with Khweis's challenge to the terrorism-promotion enhancement.

When reviewing the district court's application of a sentencing enhancement, we review factual findings for clear error and legal conclusions de novo. *United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022). There are two prongs to the § 3A1.4 enhancement. First, the offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4 cmt. n.1; 18 U.S.C. § 2332b(g)(5)(A). Second, the offense must have violated one of several enumerated statutes. 18 U.S.C. § 2332b(g)(5)(B).

Khweis concedes that his convictions satisfy the second prong. But he argues that the government hasn't met the first prong because it didn't prove by a preponderance of the evidence that he specifically intended for his conduct to coercively influence or retaliate against government conduct. We disagree.

7

We explored § 3A1.4's specific intent requirement in a series of cases involving Lashkar-e-Taiba (LET), a terrorist organization based in Pakistan. *United States v. Chandia* (*Chandia I*), 514 F.3d 365, 375–76 (4th Cir. 2008). We held that § 3A1.4 doesn't "automatically appl[y] to a material support conviction," *id.* at 376, and that mere knowledge of an organization's terrorist purpose doesn't "automatically yield an inference of the specific intent required for the enhancement." *United States v. Chandia* (*Chandia III*), 675 F.3d 329, 340 (4th Cir. 2012) (quoting *United States v. Chandia* (*Chandia II*), 395 F. App'x 53, 60 (4th Cir. 2010)).

The sentencing court must instead "explain how specific facts indicate that [the defendant's] motive in providing material support was to influence or affect government conduct by intimidation or coercion, or to retaliate against government conduct." *Chandia II*, 395 F. App'x at 60. The requisite intent, however, can be inferred from circumstantial evidence. *See Chandia III*, 675 F.3d at 340 (district court "reasonably inferred by a preponderance of the evidence that [the defendant] intended to advance [LET's terrorist] purpose"); *cf. United States v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010) (circumstantial evidence may establish weapon enhancement for drug trafficking).

The district court's factual findings provide an ample basis to infer Khweis's specific intent. The court found that Khweis "unquestionably [] believed that [he was] going to be involved in this war . . . over the Caliphate." J.A. 1498. The court further determined that Khweis was "very aware of how dangerous" ISIL was when he traveled to Syria, that he was "very aware that joining them meant that [he] would fight against allied fighters, people from the United States," and that he was "willing and able to do that." *Id.*

8

In making these findings, the court emphasized the content on Khweis's phones, including the images of the 9/11 attacks and ISIL fighters with weapons. And it agreed with the government that Khweis's travel to Syria strongly corroborated his specific intent, emphasizing the steps Khweis took to travel to ISIL territory. J.A. 1499 ("You then cleverly and deliberately and stealthily make the decision to radicalize and join ISIS in Syria and join the camp.").

The district court also adopted the government's sentencing-memorandum reasoning. *See* J.A. 1505–06 ("And the reasons that [the government has] provided in pages 6 through 8 are the reasons that I did give that enhancement."). That reasoning included "that ISIS holds destructive intentions towards the United States," "that ISIS thinks that violent acts against military personnel and civilians will influence government conduct," and "that ISIS believes such attacks are justified retaliation against governments whose fundamental values are antithetical to the subjugation of all people to Sharia law." J.A. 1417. The government's memorandum also included examples of conduct showing that Khweis "endorsed ISIS's mission and intended to further its goals," including his efforts to care for injured fighters, his financial support of ISIL members, his participation in anti-American religious trainings, and his viewing of military videos "to get inspired against ISIS'[s] enemies." *Id.*

These facts are at least as strong as those we found sufficient to demonstrate specific intent in *Chandia III*. There, we affirmed the application of § 3A1.4 where the defendant asked about training with LET in Pakistan and aided a LET leader who he knew was in the U.S. on LET business. 675 F.3d at 340. The defendant provided the leader with a

9

computer, drove him to and from the airport, and helped ship paintballs to Pakistan for military training. *Id.* at 334. We determined those facts supported a reasonable inference that the defendant intended to advance LET's terrorist purpose. *Id.* at 340.

The same is true here: The record establishes that Khweis intended to advance ISIL's purpose. So the § 3A1.4 enhancement is supported.

B.

Khweis's second argument is that "the district court substantively erred when it did not give sufficient weight to his post-conviction conduct." Appellant's Br. at 19.

Khweis's new sentence of 168 months' imprisonment is nearly 200 months below his advisory guideline range of 360 months to life. So his sentence is presumptively reasonable, and that presumption can be rebutted only if Khweis shows it is "unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Vinson*, 852 F.3d 333, 357–58 (4th Cir. 2017).

The district court thoroughly analyzed the § 3553(a) factors at Khweis's resentencing. It gave Khweis "a good deal of credit for" his efforts at rehabilitation. J.A. 1500. But it explained that it couldn't trust Khweis given his "8-year track record [of] vacillat[ing] between being a commendable person and being an absolute horrible risk to our community." *Id.* The court determined that a stiff sentence remained necessary given the seriousness of Khweis's offense conduct and the need to deter Khweis and others who might seek to imitate him. J.A. 1500–02.

The district court imposed a lower sentence for the terrorism counts on remand (concurrent 168-month sentences) than it did at Khweis's original sentencing (concurrent

10

180-month sentences). That reduction is significant because the court could have imposed a 240-month sentence for each count to make up for the consecutive 60-month sentence on Khweis' vacated § 924(c) conviction. The court even stated at Khweis's resentencing that it might have originally "given a 17- or 18-year" sentence (204 to 216 months) on the terrorism counts "had the gun charge not been present." J.A. 1501. So rather than undervaluing his post-conviction conduct, the district court reduced Khweis's sentence by at least 12 months, and perhaps by effectively up to 48 months, based on his post-sentencing rehabilitation.

  Khweis's new sentence was well within the district court's discretion, and we won't disturb it. We therefore affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*